Filed 1/7/25  In re J.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.M., <br><br> Defendant and Appellant. | F087816 <br><br> (Super. Ct. No. 23JP-00149-A) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Donald J. Proietti, Judge.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Forrest W. Hansen, County Counsel, and Ann Hanson, Deputy County Counsel; Gordon-Creed, Kelley, Holl, and Sugerman, Jeremy Sugerman and Anne H. Nguyen for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Peña, J. and Meehan, J.

**INTRODUCTION**

S.M. (mother) filed a timely notice of appeal following a contested dispositional hearing. Mother's sole claim is that because the Merced County Human Services Agency (agency) failed to conduct an adequate inquiry into whether J.M. is or may be an Indian child,[1] in compliance with Welfare and Institutions Code section 224.2, former subdivision (b),[2] the juvenile court erred when it found that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) did not apply. Mother seeks reversal of the court's ICWA finding and remand for further proceedings consistent with the law.[3]

Based on the combination of the parents' representations that they do not have any Native American ancestry and prior findings by the juvenile court that ICWA does not apply, the agency disputes there was any error and contends the court's ICWA finding is supported by substantial evidence. If this court finds error, the agency contends we may nevertheless affirm the court's orders and findings given its commitment to reviewing its

---

[1]    "[B]ecause ICWA uses the term 'Indian,' we [may at times] do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1, disapproved in part on another ground in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18 (*Dezi C.*).)

[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3]    As addressed in part I.B. of the Discussion, section 224.2 was amended, effective September 27, 2024, by Assembly Bill No. 81. (2023–2024 Reg. Sess.; Stats. 2024, ch. 656, § 3 [California Indian Child Welfare Act or Cal-ICWA] (Assembly Bill 81).) The agency's inquiry and the juvenile court's ICWA finding in this case predated Assembly Bill 81, but, for the reasons discussed by this court in *K.H.*, *E.C.*, and *Jerry R.*, the inquiry and finding were deficient under the law as it stood prior to the passage of Assembly Bill 81. (*In re K.H.* (2022) 84 Cal.App.5th 566, 598–599 & 602–605 (*K.H.*); *In re E.C.* (2022) 85 Cal.App.5th 123, 141–142 (*E.C.*); *In re Jerry R.* (2023) 95 Cal.App.5th 388, 428–429 (*Jerry R.*).)

2.

records and determining what further steps, if any, are required. Alternatively, the agency contends we may dismiss the appeal as moot.

Following the Supreme Court's recent decision in *Dezi C.*, this court ordered the parties to file supplemental briefs addressing whether conditional reversal and remand is required under that decision. (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1151–1152.) The parties maintain their respective positions in supplemental briefing.

Consistent with the Supreme Court's decision in *Dezi C.* and this court's decisions in *K.H.*, *E.C.*, and *Jerry R.*, we conclude that the juvenile court erred in finding ICWA does not apply given the absence of a documented, proper, adequate, and duly diligent inquiry, as required under California law. (§ 224.2, subds. (b)–(c); Cal. Rules of Court, rule 5.481(a)(5);[4] *Dezi C.*, *supra*, 16 Cal.5th at p. 1125; *K.H.*, *supra*, 84 Cal.App.5th at p. 591; *E.C.*, *supra*, 85 Cal.App.5th at p. 135; *Jerry R.*, *supra*, 95 Cal.App.5th at p. 405.) Therefore, we affirm the juvenile court's dispositional orders but conditionally reverse the court's ICWA finding and remand this matter with directions to ensure a proper, adequate, and duly diligent inquiry in compliance with California law. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1152; *In re Dominick D.* (2022) 82 Cal.App.5th 560, 567–568.)

## PROCEDURAL AND FACTUAL HISTORY[5]

*Events Leading Up to Detention*

On November 30, 2020, a section 300 juvenile dependency petition was filed on behalf of J.M. J.M. and a confidential half sibling were detained from their mother due to mother's inappropriate parenting, excessive discipline, substance abuse, and living in the maternal grandparents' home which was found in "deplorable conditions."

---

[4] All further references to rules are to the California Rules of Court.

[5] The facts and procedural history are summarized to include background information and information relevant to the legal issue presented.

3.

When notified the children had been detained and were ordered to be produced to the agency, mother refused and allowed the maternal grandmother to abscond with the minors out of state. The maternal grandmother hid in Mississippi to avoid the children being removed, and it took three weeks and multiple attempts by several agencies across the country to locate the children. The children were finally taken into custody on December 14, 2020.

On February 4, 2021, mother and J.M.'s father were offered family reunification services. Mother was offered substance abuse treatment, mental health services, anger management, and parenting education, but did not complete some of her classes, was unable to demonstrate or apply what she had learned from the classes she completed, and continued to test positive for methamphetamine. On September 8, 2021, J.M.'s case was dismissed and sole physical custody was given to father.[6]

On October 4, 2023, the agency received a report that mother had applied for full custody of J.M., stating that J.M. was in her physical care due to J.M. running away from her father's house. The application was denied. On October 12, 2023, social worker A.A. received records from the Vacaville Police Department, which indicated officers responded to a motel after a report was made to Solano County Child Protective Services that J.M. had run away for three months. Vacaville Police located J.M. at a motel with J.M.'s boyfriend and his parents. Mother indicated she wanted J.M. returned to the agency's custody and alleged that father abused J.M., but the allegations were unsubstantiated and J.M. was returned to father's care.

On October 5, 2023, A.A. discovered mother attempted to add J.M. to her welfare aid case on December 27, 2022, but was initially denied. Mother was successful in

---

[6] On September 29, 2022, reunification services were terminated for the confidential half sibling due to mother's failure to meet her case plan objectives, and the half sibling was placed in long-term foster care.

July 2023. On May 26, 2023, mother indicated J.M.'s boyfriend was living in mother's home, and J.M. was pregnant.

On October 11, 2023, A.A. discovered multiple reports from law enforcement and child protective services mentioning J.M. had run away multiple times, but no records that either parent was the one who reported her as a runaway. On October 12, 2023, A.A. spoke with father, who stated J.M. was unhappy in his care so he allowed the maternal grandparents to pick her up from his home in December 2022. Father did this knowing mother resided with the maternal grandparents and was not allowed to have her children in her care. Father did not maintain contact with J.M., did not know she was pregnant, and did not report her as a runaway.

On October 12, 2023, A.A. with the assistance of a Los Banos Police Department officer, interviewed J.M. at her school. J.M. was visibly pregnant, refused to cooperate and requested the presence of her mother. Mother arrived shortly after, appearing to be under the influence. Mother confirmed the maternal grandparents picked up J.M. and that J.M. was residing with them and mother since December 22, 2022. Mother stated she did not report J.M. was in her care because she did not trust the agency. She also refused to do a hair follicle drug test and claimed that while she had used methamphetamine earlier that year, she had not used it for a few months.

On October 12, 2023, A.A. observed mother's home. Mother, the maternal grandparents, J.M. and J.M.'s boyfriend all lived in the home, and it was cleaner than it had been during the prior dependency case.

*Section 300 Petition and Detention Hearing*

On October 16, 2023, a section 300 petition was filed alleging J.M. came within the jurisdiction of the juvenile court based on mother's failure or inability to supervise or protect J.M. (§ 300, subd. (b)(1)(A)), inability to provide regular care for J.M. due to mother's mental illness, developmental disability or substance abuse (§ 300,

5.

subd. (b)(1)(D)), and that J.M.'s half sibling had been abused or neglected and there was a substantial risk that J.M. would be abused or neglected (§ 300, subd. (j)).

At the October 17, 2023, detention hearing, the juvenile court ordered J.M. be detained and ruled as follows.

> "Reviewing allegations of the petition, particularly the (b) allegations—(b)(1) allegations, that [J.M.] came to the attention of the Agency as [J.M.] had run away from her father's home and was in the custody of her mother. Mother was seeking full custody, which was denied by the Family Law Court. There have been a number of concerns concerning [J.M.'s] welfare check or AWOLing multiple times, police records being obtained.

> "The totality of the allegations are such that I am concerned about [J.M]'s safety, particularly with regard to the history of this case and the family's history in child dependency, [mother's] history as well. I am concerned about her very fragile condition given the fact that she's in the last trimester, from what I am told, in her pregnancy. She needs to be in protective custody.

> "I am going to order that [J.M.'s] continuance in her mother's home or father's home is contrary to the child's welfare. I am ordering temporary placement and care be vested with the Agency and that reasonable efforts have been made to prevent the need for removal."

*ICWA Status*

The October 16, 2023, petition included a checked box which stated, "I have asked as to whether the child is or may be a member of an Indian tribe or eligible for membership and the biological child of a member and the *Indian Child Inquiry Attachment* (form ICWA-010(A)) is attached."

The attached form indicated mother and father were asked and "gave … no reason to believe the child is or may be an Indian child."

The October 17, 2023, detention report contained the following statement regarding ICWA.

> "The Indian Child Welfare Act does not apply.

6.

"On December 10, 2020, at the trailed detention/interim hearing in Merced County case number 20JP-00139-A, the Court found that ICWA did not apply as to [father.]

"On February 24, 2022, at the Twelve Month Status Review Hearing in Merced County case number 20JP-00139-B, it was determined that ICWA does not apply to the mother .…"

During the October 17, 2023, detention hearing, the juvenile court stated, "I'll take judicial notice that on February 24, 2022, in this same case, 20JP139A, the Court made a determination that the Indian Child Welfare Act did not apply to the parents. [¶] Can I confirm with [father], have you learned any new information that you may have American Indian heritage in your family? [¶] [Mother]?" Both mother and father responded, "No."

A Parental Notification of Indian Status form was filled out by mother and filed on October 25, 2023. Mother checked the box on the form indicating J.M. had no applicable Indian status and signed and dated the form.

A jurisdiction report prepared on December 8, 2023, in addition to the above, stated, "Neither parent has provided any new information regarding Native American ancestry."

*February 20, 2024, Contested Disposition Hearing*

At the February 20, 2024, contested disposition hearing, father waived his right to reunification services and indicated he did not want custody of J.M. Mother requested reunification services and indicated an intention to enter in-patient rehabilitation.

The juvenile court ruled by clear and convincing evidence there was a substantial danger to the physical health, safety, and welfare of J.M. should she be returned to the care and custody of her mother because of substance abuse issues, parenting issues, and failure to reunify in a related case. The court did not offer reunification services to mother pursuant to section 361.5, subdivision (b)(10) because she previously had

7.

reunification services terminated for J.M.'s half sibling.  Since that time, mother also had not made reasonable effort to treat the problems that led to removal.

The juvenile court did not make any findings regarding ICWA, but took judicial notice of "all prior findings, orders, and judgments of this court in this matter."  The case remained open to allow mother to make motions for change of order should mother be successful in her treatment.  Mother filed a timely appeal of the court's dispositional order on March 25, 2024.

**DISCUSSION**

**I.      Legal Principles**

**A.      ICWA**

"ICWA was enacted in 1978 by Congress 'out of concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies."  92 Stat. 3069, 25 U.S.C. § 1901(4).  Congress found that many of these children were being "placed in non-Indian foster and adoptive homes and institutions," and that the States had contributed to the problem by "fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families."  §§ 1901(4), (5).  This harmed not only Indian parents and children, but also Indian tribes.  As Congress put it, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children."  § 1901(3).' (*Haaland v. Brackeen* (2023) 599 U.S. [255, 265]; accord, [*Mississippi Band of Choctaw Indians*] *v. Holyfield* (1989) 490 U.S. 30, 32–36 …; *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*).)" (*Jerry R.*, *supra*, 95 Cal.App.5th at pp. 407–408.)

" '[ICWA] thus aims to keep Indian children connected to Indian families.  "Indian child" is defined broadly to include not only a child who is "a member of an Indian tribe," but also one who is "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  § 1903(4).  If the Indian child lives on a

8.

reservation, ICWA grants the tribal court exclusive jurisdiction over all child custody proceedings, including adoptions and foster care proceedings. § 1911(a). For other Indian children, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. § 1911(b). When a state court adjudicates the proceeding, ICWA governs from start to finish. That is true regardless of whether the proceeding is "involuntary" (one to which the parents do not consent) or "voluntary" (one to which they do).' (*Haaland* [*v. Brackeen*], *supra*, 599 U.S. at [pp. 265–266]; accord, [*Mississippi Band of Choctaw Indians v.*] *Holyfield*, *supra*, 490 U.S. at p. 36.)" (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 408.)

ICWA sets the minimum standards, providing, "In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this title …, the State or Federal court shall apply the State or Federal standard." (25 U.S.C. § 1921; accord, § 224, subd. (d).) "The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court knows or has reason to know that an Indian child is involved.' " (*Isaiah W.*, *supra*, 1 Cal.5th at p. 8, quoting 25 U.S.C. § 1912(a).) "ICWA's notice requirements serve two purposes. First, they facilitate a determination of whether the child is an Indian child under ICWA." (*Isaiah W.*, at p. 8, citing 25 U.S.C. § 1903(4).) "Second, ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child." (*Isaiah W.*, at p. 8, citing 25 U.S.C. §§ 1911(a), (c), 1912(a).)

"To facilitate notice in appropriate cases, federal law provides, 'State courts must ask each participant in an emergency or voluntary or involuntary child custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all

responses should be on the record.  State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' (25 C.F.R. § 23.107(a) (2023).)  California law requires more and, relevant to the issue raised here, imposes on counties a broad duty of inquiry into whether a child placed in the temporary custody of the county is or may be an Indian child. (§ 224.2, subd. (b).)"  (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 409.)

### B.      Cal-ICWA

"In 2006, 'persistent noncompliance with ICWA led [our state] Legislature … to "incorporate[] ICWA's requirements into California statutory law." ' "  (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 409, quoting *In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)  " ' "In 2016, new federal regulations were adopted concerning ICWA compliance" ' " (*Jerry R.*, at pp. 409–410, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 595), but "[p]rior to that time, 'neither ICWA itself nor the implementing federal regulations in effect … imposed a duty on courts or child protective agencies to inquire whether a child involved in a dependency proceeding was an Indian child.' "  (*Jerry R.*, at p. 410, quoting *In re T.G.* (2020) 58 Cal.App.5th 275, 289 (*T.G.*).)  Now, " 'federal regulations governing ICWA … require an ICWA inquiry be made at the inception of dependency proceedings, as well as at all proceedings that "may culminate" in foster care placement or termination of parental rights.' "  (*Jerry R.*, at p. 410, quoting *In re Rylei S.* (2022) 81 Cal.App.5th 309, 323, fn. 11.)

"Subsequently, the California Legislature enacted Assembly Bill No. 3176,[7] effective January 1, 2019, which ' "made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements." ' "  (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 410, quoting *K.H.*,

---

**7**      "Assembly Bill No. 3176 (2017–2018 Reg. Sess.) (Assembly Bill 3176)." (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 410, fn. 11.)

*supra*, 84 Cal.App.5th at p. 595.) "Assembly Bill 3176 repealed former sections 224.2, pertaining to notice, and 224.3, pertaining to inquiry, and reenacted them in different form. (Stats. 2018, ch. 833, §§ 4–7.) Section 224.3 now governs notice and section 224.2 inquiry." (*Ibid.*, fn. omitted.) The legislation "revised and recast the duties of inquiry and notice, in accordance with federal law, and, relevant to inquiry, 'revise[d] the specific steps a social worker, probation officer, or court is required to take in making an inquiry of a child's possible status as an Indian child.' " (*Id.* at p. 411, quoting Legis. Counsel's Dig., Assem. Bill 3176, Stats. 2018, ch. 833, p. 1.)

Very recently, faced with continuing difficulties and inconsistencies in this area of the law, the Legislature enacted Assembly Bill 81, effective September 27, 2024.[8] Assembly Bill 81 "create[d] a comprehensive act to protect and preserve Indian families in California and to aid in improving implementation of applicable state and federal laws." (§ 224, subd. (c).) The legislation expressly recognized, "Despite the passage of the federal Indian Child Welfare Act of 1978, Senate Bill 678 (Stats. 2006, [c]h. 838), and Assembly Bill 3176 (Stats. 2018, [c]h. 833), California continues to experience inconsistent implementation of [ICWA] and its related state law protections, thus continuing the harm and breakup of Indian families. Variation in practice undermines tribal sovereignty, furthers destructive impacts on tribes and tribal communities, puts the lives of Indian children and families at disproportionate risk for multiple adverse outcomes, and fails to address systemic racism." (*Id.*, subd. (b).) In addition to advancing the goals of clarity and consistency under California law (§ 224, subd. (c)), Cal-ICWA resolved the split of appellate authority over whether or not the duty of initial

_____

[8] The amendments to section 224.2 between Assembly Bills 3176 and 81 did not affect subdivision (b). (*Jerry R.*, *supra*, 95 Cal.App.5th at pp. 410–411, fn. 12; Assem. Bill No. 686 (2019–2020 Reg. Sess.), eff. Jan. 1, 2020; Assem. Bill No. 2944 (2019–2020 Reg. Sess.), eff. Sept. 18, 2020; Assem. Bill No. 2960 (2021–2022 Reg. Sess.), eff. Jan. 1, 2023.)

inquiry under section 224.2, former subdivision (b), arises when a child is taken into protective custody by warrant under section 340, expressly providing that it does (*id.*, subd. (b)(2)). (See *Jerry R.*, *supra*, 95 Cal.App.5th at pp. 403–404 [addressing *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743, & *In re Delila D.* (2023) 93 Cal.App.5th 953, & agreeing with *Delila D.* that the duty of initial inquiry applies regardless of how the child is taken into custody].)

As amended, section 224.2 provides, in relevant part, "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) "The duty to inquire begins for a county when first contacted regarding a child, including, but not limited to, asking a party reporting child abuse or neglect whether the party has any information that the child may be an Indian child, and upon a county department's first contact with the child or the child's family, including extended family members as defined in paragraph (1) of subdivision (c) of Section 224.1. At the first contact with the child and each family member, including extended family members, the county welfare department or county probation department has a duty to inquire whether that child is or may be an Indian child." (§ 224.2, subd. (b)(1).)

"If a child is placed into the temporary custody of a county probation department pursuant to Section 307, or received and maintained in temporary custody of a county welfare department pursuant to paragraph (1) of subdivision (a) of Section 306, or taken into or maintained in the temporary custody of a county welfare department pursuant to paragraph (2) of subdivision (a) of Section 306, or if they were initially taken into protective custody pursuant to a warrant described in Section 340, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the

12.

child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b)(2).)

"For a court presiding over any juvenile proceeding that could result in placement of an Indian child with someone other than a parent or Indian custodian, including proceedings where the parents or Indian custodian have voluntarily consented to placement of the child, the duty to inquire begins at the first hearing on a petition. At the commencement of the hearing, the court shall ask each party to the proceeding and all other interested persons present whether the child is, or may be, an Indian child, whether they know or have reason to know that the child is an Indian child, and where the child, the parents, or Indian custodian are domiciled, as defined in Section 224.1. Inquiry shall also be made at the first appearance in court of each party or interested person who was not present at the first hearing on the petition. The inquiry and responses shall occur on the record. The court shall instruct the parties and persons present to inform the court if they subsequently receive information that provides reason to know the child is, or may be, an Indian child." (§ 224.2, subd. (c).)

## II.     Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143; *Adoption of M.R.* (2022) 84 Cal.App.5th 537, 542; rule 5.482(c)(1), (2).)[9]  First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, *supra*, at

---

[9]     Assembly Bill 81 effected only minor technical changes to subdivision (i) of section 224.2.

13.

p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, at p. 143; rule 5.482(c)(1).) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence ….'" (*K.H.*, *supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, at p. 143; rule 5.482(c)(1).)

"The juvenile court's finding on the second element 'requires the … court to "engage in a delicate balancing of" various factors in assessing whether the … inquiry was proper and adequate within the context of ICWA and California law, and whether … [there was] due diligence.' (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, *supra*, at p. 589; accord, *E.C.*, *supra*, at p. 143; *In re Ezequiel G.*, *supra*, at p. 1003.)" (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 427.)

## III.   Analysis

### A.   Error

" ' "Notice to Indian tribes is central to effectuating ICWA's purpose …." ([*T.G.*, *supra*, 58 Cal.App.5th at p. 288], citing *Isaiah W.*, *supra*, [1 Cal.5th] at p. 8.) However, it is typically "not self-evident whether a child is an Indian child" ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741), and "the question of membership is determined by the tribes, not the courts or child protective agencies" (*T.G.*, *supra*, at p. 294). To ensure notice in cases in which it is known or there is reason to know an Indian child is involved (25 U.S.C. § 1912(a); … § 224.3, subd. (a)), the law imposes an affirmative and ongoing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child (§ 224.2, subd. (a)) …. ' " (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 411, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 588.) Under California law, " 'agencies now have a broader duty of inquiry and a duty of documentation.' " (*Jerry R.*, *supra*, 95 Cal.App.5th at

p. 411, citing *K.H.*, *supra*, at p. 588, fn. omitted, citing § 224.2, subd. (b) & rule 5.481(a)(5).)

"[C]omplying with the duty of inquiry and documentation under ICWA is unlikely to 'prove onerous' in most cases [citation], [but] in no event may we interpret the law to relieve the court or the agency of complying with the plain directives imposed by statute and rule (*K.H.*, *supra*, [84 Cal.App.5th] at p. 620; see § 224.2; rules 5.480–5.482). There may be cases in which there is no one else to ask beyond [one or both] parents [and a few relatives], but, if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) Properly developed and documented, 'the court has relatively broad discretion to determine [that] the … inquiry was proper, adequate, and duly diligent on the specific facts of the case.' (*K.H.*, *supra*, at p. 589; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 157.)" (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 428.)

In this case, mother and father denied any Native American ancestry, and mother contends on appeal that no other maternal or paternal relatives were asked even though the record contains mention of some maternal and paternal relatives.

The agency points to no inquiries of anyone other than the parents, but it argues that "the unequivocal and repeated representations from mother and father that there was no Native American ancestry, no membership or eligibility for membership in a federally recognized tribe, and no new ICWA information to be disclosed, combined with the lack of any objection or challenge to the sufficiency of the juvenile court's prior ICWA findings in the earlier dependency proceedings, permitted the juvenile court to reasonably determine that ICWA does not apply and that J[.M.] is not an Indian child as defined by ICWA." In supplemental briefing, the agency contends the court's finding that ICWA does not apply is supported by substantial evidence because of "(1) unchallenged prior judicial findings made in earlier dependency proceedings involving the same family that ICWA did not apply, (2) the parents' denial in open court that they had no new information that would alter the prior judicial findings, (3) the parents' reaffirmation that

15.

they held no tribal memberships or were in the process of obtaining tribal membership, and (4) mother's ICWA-020 Parental Notification of Indian Status confirming that she had no Native American ancestry and was not a member of any Native American tribe."

For the reasons that follow, we reject the agency's arguments.

### 1.     Absence of Objection to ICWA Findings

First, in pointing out there were no objections to earlier ICWA findings, the agency necessarily implies that an ICWA claim may be forfeited or its failure to conduct an adequate inquiry may be otherwise excused because there were no objections. This argument is unavailing. As this court has stated, " 'The purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citations], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest. However, while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.)[10] The Supreme Court subsequently reiterated that "a parent may 'challenge a finding of ICWA's inapplicability in an appeal from the subsequent order, even if [they] did not raise such a challenge in an appeal from the initial order.' (*Isaiah W.*, *supra*, 1 Cal.5th at p. 6.) We justified this conclusion in part because ICWA permits its notice requirements to 'be

---

**10**      There may be circumstances in which a parent's argument that additional people were not asked may be deemed unmeritorious. As we recognized in *K.H.*, "it is difficult to envision a successful claim premised on the agency's failure to question a second cousin or a family friend, if the agency inquired of a child's closer maternal and paternal relatives on both sides, those relatives provided no information suggesting possible Indian ancestry, and the agency documented its efforts in the record for the juvenile court's review." (*K.H.*, *supra*, 84 Cal.App.5th at p. 604.) That circumstance is not present in cases such as this, where there is no documentation of a proper, adequate, and duly diligent inquiry. (*Id*. at p. 605.)

enforced *after* the issuance of an order terminating parental rights.' (*Id*. at p. 13; see also 25 U.S.C. § 1914.) Accordingly, ICWA findings 'are preserved for review *irrespective of any action or inaction on the part of the parent ….*' " (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1149–1150, quoting *In re K.R.* (2018) 20 Cal.App.5th 701, 708.)

### 2.    Inquiry of Parents Only

Next, bare reliance on the parents' representations regarding Native American ancestry does not suffice. In *K.H.*, this court explained that "the law demands more than merely inquiring of [the parents]." (*K.H.*, *supra*, 84 Cal.App.5th at p. 620; accord, *Jerry R.*, *supra*, 95 Cal.App.5th at p. 428.) Subsequently, and binding upon the parties and the juvenile court, *Dezi C.* stated, "[N]othing in the statutory scheme permits the required inquiry to be halted or short circuited when a parent denies Indian ancestry." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1150.) This fundamental failure to comply with statutory requirements cannot be cured by simply asking the parents more than once, as the agency argues. As previously stated, "There may be cases in which there is no one else to ask beyond the parents, but, if that is so, the record must be developed to reflect that fact and supported by documentation." (*Jerry R.*, at p. 428, citing rule 5.481(a)(5).)

### 3.    Prior ICWA Findings

Finally, the agency argues that it was not error for the juvenile court to rely on its prior findings that ICWA does not apply. However, "the bare assertion that there was a previous finding that ICWA did not apply is insufficient to permit deference to the finding." (*Jerry R.*, *supra*, 95 Cal.App.5th at p. 428.) In *Jerry R.*, we noted that "the earlier finding the agency refers to here predates the amendment to rule 5.481(a)(5) requiring documentation, which was effective January 1, 2020 (*K.H.*, *supra*, [84 Cal.App.5th] at p. 599), and the many appellate decisions that have more recently shaped this area of the law (*id*. at pp. 611–618 [discussing development of various approaches in cases decided in 2021 and 2022])." (*Ibid*.) Here the prior ICWA findings do not predate the rule change, but this distinction does not result in a different conclusion because the

concerns expressed in *Jerry R.* remain at issue here.  We explained, " '[A]s the recent surge of cases reflects, following changes to California law over the past few years, the agency's discharge of its duties to inquire and document under section 224.2, subdivision (b), and rule 5.481(a)(5), is often so lacking that the juvenile court is left with little or nothing to work with; there is no evidence in the record and, therefore, nothing upon which to base a sound exercise of discretion.' " (*Ibid.*, quoting *K.H.*, at p. 605; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 156.)

Where an agency relies on a past ICWA finding, without pointing to any evidence in the record showing a reasonable inquiry into Native American ancestry that would support the court's finding of a proper, adequate, and duly diligent inquiry, courts must exercise caution.  The Legislative history underlying the 2019 and 2024 amendments to the law, the sheer volume of litigation concerning ICWA inquiries, and cases decided by this court and the Supreme Court well illustrate the rampant and continuing failure to comply with ICWA and Cal-ICWA.  Reliance on a past ICWA finding, where there is no documentation in the record reflecting that an inquiry comporting with the law was conducted, would render compliance with ICWA and Cal-ICWA illusory.

The agency relies on *Charles W.* for support and asserts that *Dezi C.* did not overrule *Charles W.*  In that case, the appellate court concluded, "[G]iven the prior ICWA finding regarding this family and the parents' unequivocal denials of Indian ancestry, we do not find it reasonably probable that further inquiry based on the record before us would yield a different result.  Thus, [f]ather fails to demonstrate a miscarriage of justice requiring remand." (*In re Charles W.* (2021) 66 Cal.App.5th 483, 492, citing *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430–1431, disapproved by *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.)  The agency's reliance on *Charles W.* is misplaced, however, as its reasoning on this point has been undermined in light of *Dezi C.*, irrespective of the fact that *Charles W.* is not expressly included in the group of cases disapproved.  (*Dezi*

18.

*C.*, at pp. 1151–1152.) Notably, *Rebecca R.*, on which *Charles W.* relied, is expressly included. (*Dezi C.*, at p. 1152, fn. 18.)

### 4. Conclusion

In sum, " ' "[o]n a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes." ' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141, quoting *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101–1102.) " ' "When, as in this case, the court's implied finding that the agency's inquiry was proper, adequate, and duly diligent rests on a cursory record and a patently insufficient inquiry …, the only viable conclusion is that the finding is unsupported by substantial evidence and the court's conclusion to the contrary constitutes a clear abuse of discretion." ' " (*Dezi C.*, at p. 1141, quoting *Kenneth D.*, at p. 1102.) Although the agency in this case does not concede the record is cursory and the inquiry patently insufficient, the deficiencies here are not distinguishable from the conceded deficiencies in *Dezi C.*, *K.H.*, *E.C.*, and *Jerry R.* (*Dezi C.*, at p. 1141 [inquiry of parents only]; *K.H.*, *supra*, 84 Cal.App.5th at p. 605 [inquiry of parents only]; *E.C.*, *supra*, 85 Cal.App.5th at p. 156 [inquiry limited to mother]; *Jerry R.*, *supra*, 95 Cal.App.5th at pp. 428–429 [inquiry of parents only].)

" 'General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved. [Citation.] Additional investigation may not develop further information establishing the need for ICWA notice, but it is essential to the enforcement of the court's and child protective agency's "affirmative and continuing duty to inquire" to construe broadly the duty to make further inquiry.' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 147, quoting *T.G.*, *supra*, 58 Cal.App.5th at p. 295.)

## B. Remedy

"ICWA and Cal-ICWA are unique statutory schemes that are intended to protect Native American heritage, cultural connections between tribes and children of Native American ancestry, the best interests of Indian children, and the stability and security of Indian tribes and families." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1125, citing *Isaiah W.*, *supra*, 1 Cal.5th at pp. 7–8; 25 U.S.C. § 1902; § 224, former subd. (a).) As previously discussed, " 'Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.' " (*Dezi C.*, at p. 1133, quoting *T.G.*, *supra*, 58 Cal.App.5th at p. 288.) " 'Although the duty of inquiry is a continuing one [citation], as we have seen in countless cases, … if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 609.)

Therefore, "error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3. When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial. [Citations.] '[U]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1136, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 617.)

We recognize that mother is not appealing from the termination of her parental rights, this action remains ongoing, and the agency and the juvenile court remain under a continuing duty of inquiry. (§ 224.2, subd. (a).) However, " 'absent a reasonable inquiry at the outset, the opportunity to gather information relevant to the inquiry is often missed

entirely.' " (*Dezi*, *supra*, 16 Cal.5th at p. 1144, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 615.) As the court concluded in *Dezi C.*, "We hold our child welfare agencies and courts to these commitments. We do so by requiring a judgment to be conditionally reversed when error results in an inadequate Cal-ICWA inquiry. It is only by conditionally reversing that we can ascertain whether error in the inquiry is prejudicial." (*Dezi C.*, at p. 1152.) Because the juvenile court erred in finding ICWA does not apply, the remedy for the error is reversal of the ICWA finding and remand with instructions to comply with the law. (*Ibid*.; *In re Dominick D.*, *supra*, 82 Cal.App.5th at pp. 567–568.)

## DISPOSITION

We affirm the juvenile court's dispositional orders but reverse the court's finding that ICWA does not apply and remand for the limited purpose of ensuring compliance with the inquiry and documentation provisions set forth in section 224.2 and rule 5.481. If, after determining that a proper, adequate, and duly diligent inquiry was made, the court concludes that ICWA does not apply, the court shall reinstate its ICWA finding. If, instead, the court concludes that ICWA applies, the court shall proceed in conformity with ICWA and Cal-ICWA.

21.